628 P.2d 1044

STATE of Idaho, Plaintiff-Respondent,

v.

Dale Julian BARSNESS, Defendant-Appellant.

No. 13486.

Supreme Court of Idaho.

May 14, 1981.

Dale Julian Barsness, pro se.

David H. Leroy, Atty. Gen., Howard W. Carsman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

SHEPARD, Justice.

Defendant-appellant, Dale J. Barsness, was charged and convicted of violation of I.C. § 49–645 for failure to yield to an authorized emergency vehicle. That statute provides:

"Upon the immediate approach of an authorized emergency vehicle making use of an audible *or* visible signal, meeting the requirements of section 49–606, Idaho Code, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the nearest edge or curb of the roadway lawful for parking and clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed. * * *" (Emphasis added.)

■ On appeal the facts and inferences arising therefrom are construed in a manner most favorable to upholding the decision of the trial court. *State v. Mundell*, 66 Idaho 297, 158 P.2d 818 (1945); 24A C.J.S. *Criminal Law* § 1849 (1962). So viewed, the record here indicates that an authorized emergency vehicle (a police car), due to the circumstances existing, *i. e.*, a felony in progress, was traveling in excess of the posted speed limits within the City of Boise displaying its flashing lights but not sounding its siren. Upon the approach of the emergency vehicle, Barsness did not drive as far as possible to the righthand side of the road nor did he stop until the emergency vehicle had passed. Rather, Barsness made a left turn in front of the oncoming emergency vehicle and a collision resulted.

Whether the driver of the emergency vehicle was driving with due regard for the safety of other persons, I.C. § 49–606, was a question for resolution by the trier of the fact and will not be disturbed upon appeal. Likewise, the question of whether Barsness saw or should have seen the oncoming emergency vehicle is likewise a question of fact for resolution by the trial court.

■ Barsness argued at trial that I.C. § 49–645, permitting an emergency vehicle to utilize an audible *or* a visible signal, is in conflict with the Boise City Code which allegedly requires both an audible and a visible signal. Assuming such conflict exists, the provisions of a city ordinance must yield to provisions of the state statute. Id. Const. Art. 12, § 2; I.C. §§ 49–581, 50–302.

The district court judgment affirming the magistrate court conviction is affirmed.

BAKES, C. J., and McFADDEN and DONALDSON, JJ., concur.

BISTLINE, Justice, dissenting.

It was admitted before the magistrate below that the police car involved here was exceeding the speed limit.[1] Since the police car was an authorized emergency vehicle, I.C. § 49–606 allowed the officer driving the car to so exceed the limit with impunity, *provided* that (1) "he does not endanger life or property," I.C. § 49–606(2)(c), and (2) he operates the vehicle with "due regard for the safety of all persons," I.C. § 49–606(4). I.C. § 49–645, which Barsness was convicted of violating, requires that drivers yield to authorized emergency vehicles "meeting the

1. The evidence shows that the police car, with an estimated *impact* speed of 52 to 54 m. p. h., *after* braking for some 130 feet, knocked the appellant's van into a pickup truck, and the police car itself continued on a distance of approximately 33 feet, until its kinetic energy was fully expended.

requirements of section 49–606, Idaho Code .... " Consequently, if the police vehicle was not meeting the requirements of I.C. § 49–606, Barsness *could not* be guilty of violating I.C. § 49–645.

An examination of the Boise City Code shows that the officer here did not meet the requirements of I.C. § 49–606, *i. e.*, he was not operating the emergency vehicle with due regard for the safety of others. The Boise City Code, § 10–3–4(c), exempts emergency vehicles from observing speed limits "only when the driver of any said vehicle while in motion sounds audible signals by bell, siren or exhaust whistle, as may be reasonably necessary, *and* when the vehicle is equipped with at least one lighted lamp displaying a red or blue light visible under normal atmospheric conditions .... " (Emphasis added.) The enactment of Boise City Code § 10–3–4 was not without authority. Id. Const. Art. XII, § 2; I.C. §§ 49–582, 50–302, 50–314;[2] *Voyles v. City of Nampa*, 97 Idaho 597, 548 P.2d 1217 (1976). So long as the purposes for which the city ordinance is enacted are valid, and so long as the ordinance does not conflict with state law, the ordinance has the effect of law. *Taggart v. Latah County*, 78 Idaho 99, 298 P.2d 979 (1956). Here, the purposes of Boise City Code § 10–3–4 are clearly valid, being designed to insure that emergency vehicles which exceed the speed limit in performance of their duties take reasonable precautions to insure that their qualified exemption from obeying traffic laws does not endanger life or property.

I cannot agree with the majority's summary conclusion that the Boise ordinance conflicts with the statute. Although I.C.

§ 49–606(3) allows an authorized emergency vehicle to disregard traffic laws where it proceeds either with sirens ablare *or* displays a flashing light, or both, Boise City Code § 10–3–4 adds the requirement that within Boise city limits emergency vehicles must display both a flashing light *and* use an audible signal, such as a siren. Simply put, the City of Boise has seen fit to go further than the state in enacting citywide safety regulations to govern the operation of fast-moving emergency vehicles. An examination of the rules for determining whether conflicts exist between state and municipal regulations inexorably leads to the conclusion that there is no conflict here.

"No generalization may be stated as to the results obtained in the authorities dealing with this problem, since the solution depends, in part, on local constitutional provisions, on local statutes, and especially, in the absence of the foregoing, *upon whether the city has been granted specific direct authority to enact such ordinances* or attempts to enact them under general, implied, or broad charter powers....

"It is fairly well agreed that there are no constitutional obstacles of a general nature which will prevent the legislature from conferring police powers or similar powers upon municipal corporations in respect of subjects which are also within the provision of state laws. These principles have been observed in respect of liquor regulations, Sunday observance ordinances, and ordinances regulating and suppressing gambling, controlling vagrancy and disorderly conduct, and dealing with such miscellaneous matters as

2. I.C. § 49–582 provides in part:

"Powers of local authorities.—(1) The provisions of this title shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from:

"(m) Prohibiting or regulating the use of heavily traveled streets by any class or kind of traffic found to be incompatible with the normal and safe movement of traffic;

. . . .

"(u) Prohibiting drivers of ambulances from exceeding maximum speed limits;

"(v) Adopting such other traffic regulations as are specifically authorized by this title."

I.C. § 50–302 provides in part:

"Cities shall make all such ordinances, bylaws, rules, regulation [regulations] and resolutions not inconsistent with the laws of the state of Idaho as may be expedient, in addition to the special powers in this act granted, to maintain the peace, good government and welfare of the corporation .... "

I.C. § 50–314 provides in part:

"Cities shall have power to: control and limit the traffic on streets, avenues and public places .... "

nuisances, regulation of dogs, *activities on the public streets and thoroughfares, including the speed at which motor vehicles may be operated thereon,* and public peace and good order." 56 Am.Jur.2d *Municipal Corporations* § 375 at 410–11 (1971) (footnotes omitted) (emphasis added).

As set forth in note two above, Idaho has specifically empowered its cities to regulate the flow of traffic within municipal boundaries. Where there has been a specific grant of such power, we should be slow to find a conflict, especially where no actual conflict exists. No actual conflict exists here because emergency vehicles may easily comply with *both* Boise City Code § 10–3–4 and I.C. § 49–606. *See Hobbs v. Biswell,* 81 N.M. 778, 473 P.2d 917, 920 (N.M.App.1970) ("The fact of double regulation does not result in the withdrawal of the municipality's authority to regulate. An ordinance may duplicate or complement statutory regulations."). Sound reasons support a city requirement which is more exacting than statutory law in this situation: Traffic density in urban areas is greater; there are more visual obstructions; and the greater frequency of intersections and traffic signals suggests that there are more opportunities for serious accidents. The city has simply added to the statutory requirements in order to accommodate the more demanding circumstances which are present when such vehicles are driven in urban areas.

The need for stricter control of emergency vehicles operating within city limits was examined in *Kuzmics v. Santiago,* 256 Pa. Super. 35, 389 A.2d 587 (1978):

"More than 500 Americans die and over 1,000 sustain major injuries each year as a result of rapid police pursuit of lawbreakers, most of whom are guilty of only minor traffic offenses . . . one pursuit in five leads to a traffic fatality (and) in only one percent of the cases was someone in the car wanted for violent crimes." *Id.* at 40, 389 A.2d at 590 (quoting Meyer, Law of Vehicle Negligence in Pennsylvania § 4.32 (1970)).

As noted in *Joyner v. District of Columbia,* No. 13532–79 (D.C.Super.Ct.1981):

"[T]he CBS program *Sixty Minutes* on November 9, 1980, [revealed] . . . that there have been an estimated 12,000 'hot pursuit' crashes a year in the United States, that such crashes have resulted in numerous deaths and injuries, and that some policemen recognize that striking an innocent bystander is a high price to pay for apprehending a fleeing suspect but, feeling 'damned if we do and damned if we don't,' would 'rather be damned for doing than for not doing.' and thus take up the chase." (Footnotes omitted.)

In short, I feel that the Court is in error in so summarily striking down Boise City Code § 10–3–4. There is a compelling need for the ordinance and it does not conflict with I.C. § 49–606.

Once it is decided that Boise City Code § 10–3–4 has the effect of law, an examination of its consequences within the context of this appeal is required. It is undisputed that the police vehicle which rammed Barsness was exceeding the speed limit and was "running silently," *i. e.,* did not have its siren going as required by the Boise City Code.

It has long been held that violation of a positive statutory inhibition is negligence *per se,* and not merely prima facie evidence of negligence. *Kinney v. Smith,* 95 Idaho 328, 508 P.2d 1234 (1973); *Riley v. Larson,* 91 Idaho 831, 432 P.2d 775 (1967); *Bale v. Perryman,* 85 Idaho 435, 380 P.2d 501 (1963); *Anderson v. Blackfoot Livestock Commission Co.,* 85 Idaho 64, 375 P.2d 704 (1962); *Brixey v. Craig,* 49 Idaho 319, 288 P. 152 (1930). This rule applies to municipal ordinances as well as statutes and regulations. *See, e. g., Frazier v. Northern Pac. Ry. Co.,* 28 F.Supp. 20 (D.Idaho 1939). This rule has proper application where emergency vehicles are affirmatively charged, by statute, with the duty of acting with "due regard for the safety of all persons." In determining that which constitutes due regard for the safety of others, I can think of no better source than a municipal ordinance which legislatively determines the minimum standards of conduct required in exactly the circumstances present here.

214

Since there is no question but that the Boise City police vehicle here was being operated in violation of Boise City Code § 10–3–4, I would hold that, as a matter of law, the police vehicle was not being driven "with due regard for the safety of all persons" as required by I.C. § 49–606(4). Since the vehicle did not meet the requirements of I.C. § 49–606, Barsness cannot be said to have violated I.C. § 49–645 by failing to yield. *See, e. g., Coughran v. Hickox,* 82 Idaho 18, 25–26, 348 P.2d 724, 728 (1960) (person who ordinarily would have right of way loses that right when in violation of the law); *Chastain v. Rook,* 122 Cal.App.2d 761, 266 P.2d 131, 133 (1954) (driver not required to yield to emergency vehicle where vehicle fails to give proper warning). The conviction should be reversed.